UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WESTPORT INSURANCE CORPORATION,　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
CITY OF WAUKEGAN,　　　　　　　　　　　)　　Case No. 14-cv-419
LUCIAN TESSMAN, DONALD MEADIE,　　)
FERNANDO SHIPLEY, HOWARD PRATT,　)　　Judge John W. Darrah
RICHARD DAVIS, PHLLIP STEVENSON,　)
TERRY HOUSE, ROBERT REPP,　　　　　)
BURTON SETTERLUND, ESTATE OF　　　)
DENNIS COBB, and JUAN A. RIVERA, JR.,　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　　　　　)

## <u>MEMORANDUM OPINION AND ORDER</u>

　　　　Plaintiff Westport Insurance Corporation ("Westport") brought this action against

Defendants the City of Waukegan, Lucian Tessman, Donald Meadie, Fernando Shipley,

Howard Pratt, Richard Davis, Phillip Stevenson, Terry House, Robert Repp, Burton Setterlund

(collectively, the "Waukegan Defendants"), and Juan A. Rivera, Jr. ("Rivera"), seeking a

declaratory judgment that it has no obligation to provide coverage under two insurance policies

issued to the City of Waukegan.  Westport filed a Motion for Judgment on the Pleadings,

pursuant to Federal Rule of Civil Procedure 12(c).  Waukegan Defendants filed a Cross Motion

for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

## BACKGROUND

　　　　Westport issued two policies to the City of Waukegan:  (1) General Liability/Law

Enforcement Policy Number 651-006954-9 ("GL/LEL Policy"), providing a $1 million limit of

liability for general liability claims and a $1 million limit of liability for law enforcement

liability claims; and (2) Umbrella Liability Policy Number 503-164027-8 ("Umbrella Policy"),

providing a $5 million limit of liability (collectively, the "Westport Policies").

(Dkt. 48, ¶¶ 32, 34; Dkt. 52, ¶¶ 32, 34).

The Westport Policies were issued for the period November 1, 1997 to

November 1, 1998, and were renewed for the periods November 1, 1998 to November 1, 1999,

and November 1, 1999 to November 1, 2000. (Dkt. 48, ¶¶ 32-35; Dkt. 52, ¶¶ 32-35.)

Rivera was transferred from Hill Correctional Center, where he was confined, to the Lake

County Jail on a writ of *habeas corpus ad testificandum* on October 27, 1992. (Dkt. 48-1, ¶ 52.)

Rivera alleges that after several days of illegal interrogation, he was forced to sign a statement

implicating himself in the rape and murder of a young girl. (*Id.* at ¶¶ 53-73.) Rivera was tried

for rape and murder in November 1993. (*Id.* ¶ 103.) Rivera was convicted of first-degree

murder and sentenced to life in prison without the possibility of parole. (*Id.*) Rivera was retried

and convicted of first-degree murder in September and October 1998, and was again sentenced

to life in prison without the possibility of parole. (Dkt. 52, ¶ 23, 24.) The Illinois Appellate

Court Second District reversed Rivera's conviction and entered a judgment of acquittal on

December 9, 2012. (Dkt. 48-1 ¶ 113.) Rivera was released from prison on January 6, 2012.

(Dkt. 48-1 ¶ 114).

## LEGAL STANDARD

A Rule 12(c) motion for judgment on the pleadings permits a party to move for judgment

after both the plaintiff's complaint and the defendant's answer have been filed.

Fed.R.Civ.P. 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6)

motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). The court

construes the complaint's allegations liberally in favor of the insured. *Gen. Agents Ins.*

*Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

Illinois law governs this dispute. In construing an insurance policy, a court's primary task is to ascertain the intent of the parties as expressed in their agreement. *Pekin Insurance Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). Courts construe a policy as a whole by examining the risk undertaken, the subject matter that is insured, and the purpose of the entire policy. *Id.* If the terms in a policy are unambiguous, they are given their plain and ordinary meaning. *Id.* Ambiguous terms are strictly construed against the insurer. *Id.* "The underlying complaints and the insurance policies must be liberally construed in favor of the insured." *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991).

A court determines whether an insurer has a duty to defend by examining the underlying complaint and the language of the insurance policy. *Midwest Sporting Goods,* 828 N.E.2d at 1098. "An insurer's duty to defend its insured is broader than its duty to indemnify." *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 338 (7th Cir. 2010). "If the underlying complaint alleges facts within or potentially within the policy's coverage, the insurer's duty to defend arises even if the allegations are groundless, false or fraudulent." *United Nat. Ins. Co. v. 200 N. Dearborn P'ship*, 2012 IL App (1st) 100569, ¶ 17, 979 N.E.2d 920, 925 (Ill. App. Ct. 2012). However, "once the duty to defend is found to exist with respect to one or some of the theories of recovery advanced in the underlying litigation, the insurer must defend the insured with regard to the remaining theories of recovery as well." *Nat'l Union Fire Ins. Co. of*

*Pittsburgh, Pennsylvania v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042-43 (Ill. 1994).  If an insurer has no duty to defend, it has no duty to indemnify.  *McFatridge*, 604 F.3d at 338.

## ANALYSIS

Rivera filed suit against Waukegan Defendants and others, alleging various civil rights violations and common law tort claims relating to Rivera's conviction for rape and murder and his subsequent twenty-year imprisonment.   Rivera's Second Amended Complaint brings assorted claims under thirteen counts against the Waukegan Defendants:

> (1)  a § 1983 claim alleging a coerced and false confession in violation of his Fifth Amendment rights;
> (2)  a § 1983 claim alleging a coerced and false confession in violation of his Fourteenth Amendment rights;
> (3)  a § 1983 claim for federal malicious prosecution[1];
> (4)  a § 1983 due process claim alleging exculpatory evidence was withheld;
> (5)  a § 1983 claim alleging a conspiracy to deprive him of his constitutional rights;
> (6)  a § 1983 claim alleging a failure to intervene;
> (7)  an Illinois state law claim alleging malicious prosecution;
> (8)  an Illinois state law claim alleging intentional infliction of emotional distress;
> (9)  an Illinois state law claim alleging a civil conspiracy to protect officers from liability;
> (10)  an Illinois state law claim alleging defamation;
> (11)  an Illinois state law claim for *respondeat superior*;
> (12)  an Illinois state law claim for indemnification; and
> (13)  a § 1983 claim alleging a conspiracy to deny Rivera access to courts.

(Dkt. 59, Ex. 1-B).

The pertinent coverage language is found in Section 1 of Part II of the GL/LEL Policy:

> 1.      Coverage
>
> a.  General Liability
> We will pay all sums in excess of the "**Self Insured Retention**" limit stated in the Policy Declarations that any "**Insured**" becomes legally obligated to pay as damages because of "**Bodily Injury**" or "**Property Damage**" caused by an "**Occurrence**", or "**Advertising Injury**" or "**Personal Injury**'" caused by an offense to which this coverage applies. The amount we will pay in damages is limited as described in Section 2 B.

_____

[1] Rivera's Second Amended Complaint notes that a malicious prosecution claim under § 1983 is not currently recognized in this Circuit and is included to preserve the issue for appeal.

below. The above stated coverage applies only if the "**Occurrence**" or offense occurs during the policy period and within the Policy Territory as set forth in the General Policy Provisions. This General Liability Coverage Part does not apply if the "**Occurrence**" or offense arises as a result of a "**Law Enforcement Activity**".

b. Law Enforcement Liability
We will pay all sums in excess of the "**Self Insured Retention**" limit stated in the Policy Declarations that any "**Insured**" becomes legally obligated to pay as damages because of "**Bodily Injury**" or "**Property Damage**" caused by an "**Occurrence**" in the course of a "**Law Enforcement Activity**" or because of "**Advertising Injury**" or "**Personal Injury**" caused by an offense in the course of your "**Law Enforcement Activity**".

c. Duty to Defend
We shall have the right and duty to defend or be associated with the defense of any claim  or "**Suit**" seeking damages to which Part II applies, but 1.) The amount we will pay for damages is limited as described in
2. b. Limits of Insurance and Application of Limits . . .

(Dkt. 35-5, p. 52).  Common Policy Definitions are given under Section 3, Part III of the General

Policy Provisions:

9. "**Bodily Injury**" means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation sustained by a person, including death resulting from any of these at any time.

\* \* \*

21. "**Law Enforcement Activity**" means all operations of your police force or any other public safety organization which enforces the law and protects persons or property. This includes the maintenance, use or existence of any premises occupied by this organization.

\* \* \*

29. "**Occurrence**" means an accident caused by a "**Covered Cause of Loss**", including continuous or repeated exposure to substantially the same general harmful conditions.

30. "**Personal Injury**" means injury, other than "**Bodily Injury**", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

5

b.  Malicious prosecution;

***

d. Oral or written publication of material that slanders or libels a
person or organization or disparages a person's or organization's
goods, products or services; or

***

g.  Violation of the Federal Civil Rights Act of 1871 or 42 U.S.C.
1983 and similar laws.

(Dkt. 35-5, pp. 81, 84, 86).

As an initial matter, Waukegan Defendants argue that the Law Enforcement Liability

section is not limited to covering occurrences during the policy period.  The GL/LEL Policy

states "[w]e will pay only for loss that you sustain during the Policy Period shown in the

Declarations of this Policy," while the Umbrella Policy limits coverage to the "Policy Period."

(Dkt. 35-5, p. 74; Dkt. 35-8, p. 16.)  The policies "unquestionably only cover occurrences within

their stated policy periods."  *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 776 F. Supp. 2d 670,

716 (N.D. Ill. 2011) *aff'd sub nom. Am. Safety Cas. Ins. Co. v. City of Waukegan*, Ill., 678 F.3d

475 (7th Cir. 2012).  Thus, the question is if the allegations in Rivera's complaint constitute

occurrences during the policy periods: November 1, 1997 to November 1, 2000.

The most recent Illinois Appellate Court case analyzing similar issues is instructive:

*St. Paul Fire and Marine Ins. Co. v. City of Zion*, 2014 IL App (2d) 131312, 18 N.E.3d 193

(Ill. App. Ct. 2014).   In *St. Paul*, the court looked at the specific language of the plan there at

issue:

The law enforcement liability section provides, in pertinent part, that St. Paul will
"pay amounts any protected person is legally required to pay as damages for
covered injury or damage" that (1) "results from law enforcement activities or
operations by or for you," (2) "happens while this agreement is in effect," and (3)
"is caused by a wrongful act that is committed while conducting law enforcement

6

> activities or operations." The policy defines "[i]njury or damage" as "bodily injury, personal injury, or property damage." It defines "[p]ersonal injury," in pertinent part, as "injury * * * caused by * * * [m]alicious prosecution." It defines "[w]rongful act" as "any act, error, or omission."

*Id.* at 196.  The court determined that the policy "provides coverage if the 'injury' . . . 'happens' while the policy is in effect."  *Id.* at 197.  The court looked at the opinion of the first court to adopt what has since become the majority opinion on insurance coverage for allegedly tortious law enforcement activity, *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967), and approved of its holding that "the injury 'flows immediately from the tortious act.'"  *St. Paul*, 18 N.E.3d at 199 (quoting *Muller Fuel*, 232 A.2d at 174).  "Stated another way, 'it is difficult to see how [a criminal defendant's] release from prison can be described as an "injury" in any sense of the word.'"  *Id.* (quoting *Gulf Underwriters Insurance Co. v. City of Council Bluffs*, 755 F.Supp.2d 988, 1008 (S.D.Iowa 2010); *see also Billings v. Commerce Insurance Co.*, 936 N.E.2d 408, 413 (2010) (noting that favorable termination of a prosecution "is not an event that causes harm")).  *St. Paul* also distinguished the Seventh Circuit's holdings in *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124 (7th Cir. 2012), *American Safety*, and *McFatridge* as relying on the opinion in *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 382 N.E.2d 1 (Ill. App. Ct. 1979), which only analyzed malicious prosecution.  *St. Paul*, 18 N.E.3d at 197-98.

The Law Enforcement Liability section here states that the policy covers "'Bodily Injury' or 'Property Damage' caused by an 'Occurrence' in the course of a 'Law Enforcement Activity' *or* because of 'Advertising Injury' or 'Personal Injury' caused by an offense in the course of your 'Law Enforcement Activity'." (Dkt. 35-5, p. 52) (emphasis added.)   Personal injury is defined as the injury caused by an offense, not as the offense itself.  Thus, the language in the Westport Policies has the same effect as the language in the *St. Paul* policy and must be construed

similarly.  The question, therefore, is whether any injury from a claimed offense occurred during the coverage period.

The Waukegan Defendants argue that the application of this policy is limited to the claims involving Rivera's second conviction in October 1998, which would be within the policy term.  (Dkt. 59, p. 8).  On its face, Rivera's underlying complaint does not specifically allege any facts or claims regarding his October 1998 conviction.  Waukegan argues that this Court should take judicial notice of facts in Rivera's criminal matter under Federal Rule of Evidence 201, which allows courts to take judicial notice of facts "that [are] not subject to reasonable dispute because [they] can accurately and readily be determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).  Westport responds that courts cannot take judicial notice of hearsay evidence, citing *People v. Rubalcava*, 2013 IL App (2d) 120396, ¶ 34, 997 N.E.2d 809, 819 (Ill. App. Ct. 2013), and *In re J.A.*, 2013 IL App (4th) 130266-U , ¶ 41, 2013 WL 4516322, at *8 (Ill. App. Ct. Aug 22, 2013).  Courts may take judicial notice of state court orders and opinions in declaratory judgment actions.  *See Northfield*, 701 F.3d at 1128 n.2 (citing *In re Salem*, 465 F.3d 767, 771 (7th Cir.2006)).

"[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy."  *Am. Econ. Ins. Co. v. Holabird & Root*, 886 N.E.2d 1166, 1171 (2008).  Courts are "charged with comparing the underlying complaint, inferences, and *other known facts* to the insurance policy."  *Northfield Ins. Co.*, 701 F.3d at 1130.  While Rivera does not specifically allege that his claims are applicable to the 1998 trial and conviction, several of his claims potentially apply to that trial.  *See id.* at 1129 ("Because we can imagine an IIED claim *potentially* falling within the policy terms, we will assume that Starks fully intends to submit such a claim.")  Any claims regarding

an injury that occurred during the 1998 trial and conviction would potentially fall within the policy coverage. Specifically, Rivera's claim that his false confession was used during the 1998 trial is an injury that would fall within the policy coverage. A violation of the Self-Incrimination Clause of the Fifth Amendment occurs when a false confession is used in a criminal case. *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003). Thus, Rivera suffered an injury when his confession was used against him in the 1998 trial, which occurred within the coverage period.

Because Rivera's underlying complaint alleges claims that plausibly come within Westport's policy coverage, Westport owes a duty to defend.

*Indemnity*

A ruling on indemnity would require "fact finding that could conflict with facts found by the court in which the underlying suits were filed." *Lexington Ins. Co.*, 2010 WL 1910310, at *7. "When the underlying facts and the nature of the insured's conduct are disputed, the court presiding over the declaratory action typically cannot decide whether the insured acted [tortiously] . . . (and consequently whether he has coverage or not) without resolving disputes that should be left to the court presiding over the underlying tort action." *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 694 (7th Cir. 1995). Whether Westport is required to provide indemnity to the Waukegan Defendants' requires fact findings that could conflict with the underlying suit. The issue of indemnity is not yet ripe for ruling.

**CONCLUSION**

For the foregoing reasons, Westport's Motion for Judgment on the Pleadings is granted in part and denied in part and the Waukegan Defendants' Motion for Judgment on the Pleadings is granted in part and denied in part. Under Rivera's Second Amended Complaint, Westport has a

duty to defend the Waukegan Defendants.  However, the Waukegan Defendants' request for indemnity is denied without prejudice.

Date:      December 11, 2014          /s/ _____
                                      JOHN W. DARRAH
                                      United States District Court Judge