# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 14-cv-419 |
| CITY OF WAUKEGAN, | ) | |
| LUCIAN TESSMAN, DONALD MEADIE, | ) | Judge Jorge L. Alonso |
| FERNANDO SHIPLEY, HOWARD | ) | |
| PRATT, RICHARD DAVIS, PHLLIP | ) | |
| STEVENSON, TERRY HOUSE, ROBERT | ) | |
| REPP, BURTON SETTERLUND, ESTATE | ) | |
| OF DENNIS COBB, and JUAN A. RIVERA, | ) | |
| JR., | ) | |
| | | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Westport Insurance Corporation ("Westport") brought this action against Defendants the City of Waukegan, Lucian Tessman, Donald Meadie, Fernando Shipley, Howard Pratt, Richard Davis, Phillip Stevenson, Terry House, Robert Repp, Burton Setterlund (collectively, the "Waukegan Defendants" or "Waukegan"), and Juan A. Rivera, Jr. ("Rivera"), seeking a declaratory judgment that it has no obligation to provide coverage under two insurance policies issued to the City of Waukegan. The case is before the Court on three motions: Westport's motion to reconsider the Court's December 11, 2014 trigger ruling, Waukegan's motion to dismiss Count II of Westport's complaint, and Waukegan's motion for a rule to show cause for Westport's failure to comply with the December 2014 trigger ruling. The Court denies the motion to reconsider, grants the motion to dismiss, and denies the motion for rule to show cause.

## I.    BACKGROUND

Westport issued two policies to the City of Waukegan: (1) General Liability/Law Enforcement Policy Number 651-006954-9 ("GL/LEL Policy"), providing a $1 million limit of liability for general liability claims and a $1 million limit of liability for law enforcement liability claims; and (2) Umbrella Liability Policy Number 503-164027-8 ("Umbrella Policy"), providing a $5 million limit of liability (collectively, the "Westport Policies"). (ECF No. 48, ¶¶ 32, 34; ECF No. 52, ¶¶ 32, 34).

The Westport Policies were issued for the period November 1, 1997 to November 1, 1998, and were renewed for the periods November 1, 1998 to November 1, 1999, and November 1, 1999 to November 1, 2000. (ECF No. 48, ¶¶ 32-35; ECF No. 52, ¶¶ 32-35.)

On October 27, 1992, Rivera was transferred from Hill Correctional Center, where he was confined on unrelated charges, to the Lake County Jail on a writ of *habeas corpus ad testificandum*. (ECF No. 48-1, ¶ 52.) Rivera alleges that after several days of illegal interrogation, he was forced to sign a statement implicating himself in the rape and murder of a young girl. (*Id.* at ¶¶ 53-73.) Rivera was tried for rape and murder in November 1993. (*Id.* ¶ 103.) He was convicted of first-degree murder and sentenced to life in prison without the possibility of parole. (*Id.*) He was retried and convicted of first-degree murder in September and October 1998, and was again sentenced to life in prison without the possibility of parole. (ECF No. 52, ¶ 23, 24.) The Illinois Appellate Court reversed Rivera's conviction and entered a judgment of acquittal on December 9, 2011. (ECF No. 48-1 ¶ 113.) Rivera was released from prison on January 6, 2012. (ECF No. 48-1 ¶ 114). He subsequently filed suit against the Waukegan Defendants, asserting claims of civil rights violations in numerous counts, as follows:

> (1) a § 1983 claim alleging a coerced and false confession in violation of his Fifth Amendment rights;

(2) a § 1983 claim alleging a coerced and false confession in violation of his Fourteenth Amendment rights;

(3) a § 1983 claim for federal malicious prosecution[1];

(4) a § 1983 due process claim alleging exculpatory evidence was withheld;

(5) a § 1983 claim alleging a conspiracy to deprive him of his constitutional rights;

(6) a § 1983 claim alleging a failure to intervene;

(7) an Illinois state law claim alleging malicious prosecution;

(8) an Illinois state law claim alleging intentional infliction of emotional distress;

(9) an Illinois state law claim alleging a civil conspiracy to protect officers from liability;

(10) an Illinois state law claim alleging defamation;

(11) an Illinois state law claim for *respondeat superior*;

(12) an Illinois state law claim for indemnification; and

(13) a § 1983 claim alleging a conspiracy to deny Rivera access to courts.

(ECF No. 59, Ex. 1-B, 2d Am. Compl., *Rivera v. Lake Cty. et al.*, Case No. 12 C 8655.[2]) The Waukegan Defendants tendered their defense to Westport (ECF No. 48, ¶ 45), and Westport initiated this coverage action, seeking a declaratory judgment that Rivera's claims do not trigger the Westport policies and Rivera is collaterally estopped from arguing otherwise.

The parties filed cross motions for judgment on the pleadings. Judge Darrah, to whom this case was previously assigned, granted the motions in part and denied them in part. On the issue of whether Westport had a duty to defend, Judge Darrah ruled that Rivera's claim that the use of his coerced confession violated his Fifth Amendment self-incrimination rights triggered Westport's duty to defend the Waukegan Defendants because the coerced confession was used against Rivera at his 1998 retrial, which occurred within a Westport policy period. On the issue of indemnity, Judge Darrah ruled that the matter was not ripe for judgment while the underlying action remained undecided. (ECF No. 84 ("Judge Darrah's trigger ruling") *reported at Westport Ins. Corp. v. City of Waukegan*, 75 F. Supp. 3d 821 (N.D. Ill. 2014).)

---

[1] Rivera's Second Amended Complaint notes that a malicious prosecution claim under § 1983 is not currently recognized in this Circuit and is included to preserve the issue for appeal.

[2] Rivera later filed a Third Amended Complaint, which is identical to the Second Amended Complaint except that it names as a defendant Maria Lacour, a special representative for two deceased defendants.

Westport promptly moved for the entry of a final judgment so it could proceed with an appeal of Judge Darrah's trigger ruling. (ECF No. 85.) This case was reassigned to the undersigned judge while the parties were in the midst of briefing Westport's motion. Before this Court issued any ruling, the parties in the underlying action reached a settlement agreement. Westport withdrew its motion for final judgment because the indemnity issue was now ripe for decision (ECF No. 100), and the parties filed the instant motions.

## II.     WESTPORT'S MOTION TO RECONSIDER

Having withdrawn its motion for final judgment, Westport has now filed a motion for reconsideration of Judge Darrah's trigger ruling, especially in light of the Illinois Appellate Court's recent opinion in *Indian Harbor Insurance Co. v. City of Waukegan*, 33 N.E.3d 613, 616 (Ill. App. Ct. 2015), which addresses another insurer's duty to defend Waukegan under different policies in the same underlying action brought by Rivera against Waukegan.

Because Judge Darrah's trigger ruling did not dispose of this case in its entirety, Westport's motion to reconsider is governed by Federal Rule of Civil Procedure 54(b). Under this rule, a district court has inherent authority to reconsider its own orders entered prior to final judgment. *See Saunders v. City of Chi.*, No. 12-CV-09158, 2015 WL 7251938, at *2-3 (N.D. Ill. Nov. 17, 2015). "Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Conditioned Ocular Enhancement, Inc. v. Bonaventura*, 458 F. Supp. 2d 704, 707 (N.D. Ill. 2006) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). A motion to reconsider may be appropriate if there has been "a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Santamarina v. Sears, Roebuck & Co.*, 466 F. 3d 570, 572 (7th Cir. 2006).

Although Waukegan is correct that it is unusual to entertain a motion for reconsideration of a months-old order, the Court will entertain Westport's motion under the unique circumstances of this case. Westport has explained that it omitted to file a timely motion for reconsideration immediately after Judge Darrah issued his trigger ruling only because, based on the status of the underlying action at the time, it believed there was nothing left for the district court to decide and Westport could seek immediate appellate review; now that the underlying case has been resolved, Westport merely seeks the opportunity to move for reconsideration that it would have taken if the circumstances had been as they are now. Waukegan is not prejudiced by the Court's consideration of the motion for reconsideration because this litigation has not materially advanced since Judge Darrah's trigger ruling. Further, the issue of trigger—an issue of Illinois law—is central to any consideration the Court will give to the indemnity issue, so it would be prudent to reconsider the matter in light of the new authority from the Illinois Appellate Court in *Indian Harbor* and *County of McLean v. States Self-Insurers Risk Retention Group, Inc.*, 33 N.E.3d 1012 (Ill. App. Ct. 2015), before proceeding any further in this case.

Westport insists that Judge Darrah erred because his decision does not conform to either of the trigger theories that Illinois courts have recognized in the context of wrongful conviction claims. In a number of recent cases, including *St. Paul Fire & Marine Insurance Co. v. City of Zion*, 18 N.E.3d 193, 196 (Ill. App. Ct. 2014), *Indian Harbor* and *County of McLean*, the Illinois Appellate Court has held that a malicious prosecution claim triggers insurance coverage when the prosecution is initiated because that it is when the injury functionally occurs. But federal courts in Illinois, relying on *Security Mutual Casualty Co. v. Harbor Insurance Co.*, 382 N.E.2d 1, 6 (Ill. App. Ct. 1978), *rev'd on other grounds*, 397 N.E.2d 839 (1979), have typically held that a malicious prosecution claim triggers insurance coverage when the claim accrues because there

can be no injury or offense until all the elements of the tort, including exoneration, are met. *See Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012), *Northfield Ins. Co. v. City of Waukegan*, 701 F. 3d 1124 (7th Cir. 2012), *Nat'l Cas. Co. v. McFatridge*, 604 F.3d 335, 344-45 (7th Cir. 2010).

Thus, courts interpreting Illinois law have held that coverage in wrongful conviction cases is triggered either at the time criminal proceedings are initiated against the underlying plaintiff, or at the time he is exonerated and a malicious prosecution claim accrues, but never in between. Under all of these decisions, the fact that a wrongfully convicted person is languishing in prison during an insurer's policy period does not trigger the policy if no insured party commits an independent offense or wrongful act and no claim based on a covered offense accrues during the policy period. *See, e.g., Indian Harbor*, 33 N.E.3d at 623-24; *McFatridge*, 604 F.3d at 344-45; *see also Northfield Ins. Co. v. City of Waukegan*, 761 F. Supp. 2d 766, 771-74 (N.D. Ill. 2010) (malicious prosecution not a continuing tort that supports a continuous trigger theory), *aff'd*, 701 F.3d 1124 (7th Cir. 2012). Rivera was coerced to confess in 1992, leading to a trial and conviction in 1993, and he was exonerated in December 2011, leading to his release from prison in January 2012; therefore, according to Westport, his claims trigger coverage in one of those years, not in the late 1990s, when the Westport policies were in effect.

Waukegan responds that Judge Darrah correctly ruled that the use of Rivera's coerced confession at his 1998 retrial potentially triggered coverage for his § 1983 claim of a Fifth Amendment self-incrimination clause violation, and therefore Westport had a duty to defend Waukegan in the Rivera suit, regardless of when any malicious prosecution or prosecutorial due process claim might have been triggered.

In construing an insurance policy, a court's primary task is to ascertain the intent of the parties as expressed in their agreement. *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). The pertinent coverage language is found in Section 1 of Part II of Westport's GL/LEL Policy:

> 1.      Coverage
>
> a.  General Liability
> We will pay all sums in excess of the "**Self Insured Retention**" limit stated in the Policy Declarations that any "**Insured**" becomes legally obligated to pay as damages because of "**Bodily Injury**" or "**Property Damage**" caused by an "**Occurrence**", or "**Advertising Injury**" or "**Personal Injury'**" caused by an offense to which this coverage applies. The amount we will pay in damages is limited as described in Section 2 B. below. The above stated coverage applies only if the "**Occurrence**" or offense occurs during the policy period and within the Policy Territory as set forth in the General Policy Provisions. This General Liability Coverage Part does not apply if the "**Occurrence**" or offense arises as a result of a "**Law Enforcement Activity**".
>
> b.  Law Enforcement Liability
> We will pay all sums in excess of the "**Self Insured Retention**" limit stated in the Policy Declarations that any "**Insured**" becomes legally obligated to pay as damages because of "**Bodily Injury**" or "**Property Damage**" caused by an "**Occurrence**" in the course of a "**Law Enforcement Activity**" or because of "**Advertising Injury**" or "**Personal Injury**" caused by an offense in the course of your "**Law Enforcement Activity**".
>
> c.  Duty to Defend
> We shall have the right and duty to defend or be associated with the defense of any claim   or "**Suit**" seeking damages to which Part II applies, but 1.) The amount we will pay for damages is limited as described in 2. b. Limits of Insurance and Application of Limits . . .

(ECF No. 35-5, at 52.)  Common Policy Definitions are given under Section 3, Part III of the General Policy Provisions:

> 9. "**Bodily Injury**" means bodily injury, sickness, disease, disability, shock, mental anguish, mental injury and humiliation sustained by a person, including death resulting from any of these at any time.

* * *

21. "**Law Enforcement Activity**" means all operations of your police force or any other public safety organization which enforces the law and protects persons or property. This includes the maintenance, use or existence of any premises occupied by this organization.

* * *

29. "**Occurrence**" means an accident caused by a "**Covered Cause of Loss**", including continuous or repeated exposure to substantially the same general harmful conditions.

30. "**Personal Injury**" means injury, other than "**Bodily Injury**", arising out of one or more of the following offenses:

> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;

> ***

> d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

> ***

> g. Violation of the Federal Civil Rights Act of 1871 or 42 U.S.C. 1983 and similar laws.

(ECF No. 35-5, at 81, 84, 86.)

Thus, under both the General Liability and Law Enforcement Liability coverages, the Westport policies provide coverage for "personal injury caused by an offense." "Personal injury" is defined as "injury . . . arising out of" any of a number of enumerated "offenses," including "[m]alicious prosecution" and, more to the point, "[v]iolation of the Federal Civil Rights Act of 1871 or 42 U.S.C. 1983 and similar laws."

Prior wrongful conviction trigger cases in Illinois, interpreting similar (but often not identical) "personal injury" language, have typically addressed underlying claims of the tort of

8

malicious prosecution. Rivera's complaint included claims of malicious prosecution and prosecutorial due process, but he also made a § 1983 claim for violation of his Fifth Amendment self-incrimination rights, and neither party has identified a case that specifically addresses when insurance coverage for any such claim is triggered.[3] As Judge Darrah explained, if at least one claim in a suit against the insured is potentially covered, then the insurer is required to defend the entire suit. *See Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1015 n. 2 (Ill. 2010); *Nat'l Union Fire Ins. Co. of Pittsburgh v. Glenview Park Dist.*, 632 N.E.2d 1039, 1042-43 (Ill. 1994).

Whatever courts in Illinois have said about when, for purposes of insurance coverage, "personal injury" "arising out of" malicious prosecution occurs, or when the "offense" of malicious prosecution occurs, "[t]he privilege against self-incrimination guaranteed by the Fifth Amendment is a fundamental *trial right* of criminal defendants," *United States v. Verdugo-Urquidez*, 494 U.S. 259, 264 (1990) (emphasis added), and a Fifth Amendment violation for which § 1983 provides a right to recovery occurs only with "*courtroom use* of a criminal defendant's compelled, self-incriminating testimony," *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1027 (7th Cir. 2006) (citing *Burrell v. Virginia*, 395 F.3d 508, 513 (4th Cir. 2005)).

Judge Darrah relied on the recent decision of the Illinois Appellate Court in *St. Paul Fire and Marine Insurance Co. v. City of Zion*, 18 N.E.3d 193 (Ill. App. Ct. 2014), which looked to the leading case on trigger of coverage for tortious law enforcement activity, *Muller Fuel Oil Co. v. Insurance Co. of North America*, 232 A.2d 168 (N.J. Super. Ct. App. Div. 1967), and

---

[3] Westport treats a number of distinguishable cases as analogous. In *St. Paul Fire & Marine Ins. Co. v. City of Zion*, 18 N.E.3d 193, 196 (Ill. App. Ct. 2014), *appeal denied*, 23 N.E.3d 1207 (Ill. 2015), the underlying case involved a coerced confession, and the underlying complaint included a claim for violation of the plaintiff's self-incrimination rights, *see Hobbs v. Cappelluti*, 899 F. Supp. 2d 738, 752 (N.D. Ill. 2012), but the underlying claim the Illinois Appellate Court actually addressed in its opinion in *St. Paul* was a state-law malicious prosecution claim, not a § 1983 claim for violation of self-incrimination rights. Similarly, although *Indian Harbor*, 33 N.E.3d at 615-16, 622-23, stems from the exact same underlying matter as in this case, the Illinois Appellate Court opinion in that case addressed coverage for a malicious prosecution claim and a prosecutorial due process claim, but not a Fifth Amendment self-incrimination claim. *McLean*, 33 N.E.3d at 1014-15, also focused on malicious prosecution; the underlying complaint did not contain a self-incrimination claim.

approved of its holding that "the injury 'flows immediately from the tortious act'" because the "'essence' of the tort [of malicious prosecution] is the wrongful conduct in making the criminal charge." *St. Paul*, 18 N.E.3d at 199 (quoting *Muller Fuel*, 232 A.2d at 174). In the context of malicious prosecution, that may mean, as the Illinois Appellate Court now regularly holds, that coverage is triggered when the prosecution is initiated because the essential "tortious act" at the heart of a malicious prosecution claim, or the "essence" of the claim, is the malicious commencement of judicial proceedings against a suspect without probable cause, and the "continuing effects" are "really continuations of the same alleged harm" that do not separately trigger coverage. *See Indian Harbor*, 33 N.E.3d at 617, 623. But in the different context of a § 1983 claim of a Fifth Amendment self-incrimination clause violation, the "tortious act" that is the "essence" of the claim is "*courtroom use* of a criminal defendant's compelled, self-incriminating testimony"; there is no Fifth Amendment self-incrimination claim merely for coercing a suspect to confess, *Sornberger*, 434 F.3d at 1027, nor is exoneration an element of the cause of action.

Under this reasoning, a covered "offense" occurred and Rivera suffered a "personal injury caused by an offense" when his coerced confession was used against him in violation of his Fifth Amendment self-incrimination rights at the 1998 retrial. Both the "personal injury" occurred and the "offense" accrued, in the sense that all the elements of the cause of action occurred, in 1998, during Westport's policy period. It follows that Rivera's Fifth Amendment self-incrimination claim was potentially covered under the Westport policies, and Westport had a duty to defend Waukegan in the underlying Rivera lawsuit, under either of the recognized trigger theories.

Westport replies that, even if Waukegan is correct that coverage is triggered by courtroom use of Rivera's self-incriminating statement in a criminal case, coverage must have been triggered prior to the 1998 retrial. Westport cites *Sornberger*, in which the Seventh Circuit determined that, in a case in which the criminal charges against a suspect were dropped prior to trial, the courtroom use of the suspect's unwarned confession against her at "a probable cause hearing, a bail hearing and an arraignment proceeding," was sufficient to allow her to state a claim for violation of the Fifth Amendment's self-incrimination clause pursuant to § 1983, despite the fact that the Supreme Court had suggested in *Chavez v. Martinez*, 538 U.S. 760 (2003), that the "Fifth Amendment is, at bottom, a trial protection." *Sornberger*, 434 F.3d at 1026. Thus, based on *Sornberger*, Westport suggests that coverage for the Fifth Amendment self-incrimination claim was triggered when Rivera's self-incriminating statement was first used in pretrial proceedings, long before the 1998 retrial; stated differently, coverage was triggered when the prosecution was initiated, and the Fifth Amendment self-incrimination claim is no different from a malicious prosecution claim under the theory the Illinois Appellate Court has recently adopted.

Again, Westport makes an unwarranted assumption that a Fifth Amendment self-incrimination claim should be treated like a malicious prosecution claim for purposes of triggering insurance coverage. As the Court has explained above, a claim of malicious prosecution is critically different from a § 1983 claim of a violation of Fifth Amendment self-incrimination rights, and the Court fails to see why a Fifth Amendment self-incrimination claim should trigger coverage *only* when the incriminating statement is *first* used in the criminal case. Certainly, *Sornberger* does not hold that a plaintiff cannot recover for the use of his self-incriminating statement against him at trial if the statement has already been used against him in

pretrial proceedings. Importantly, *Sornberger* does not concern insurance coverage at all, nor is the Court aware of any relevant authority directly addressing when a Fifth Amendment self-incrimination claim triggers coverage under Illinois law. Westport is correct that Illinois law does not treat a malicious prosecution or prosecutorial due process claim as a "continuing tort" that triggers insurance coverage in each year its effects are felt, *see Northfield Ins. Co. v. City of Waukegan*, 761 F. Supp. 2d 766, 771-74 (N.D. Ill. 2010), but that fact has no bearing on when a Fifth Amendment self-incrimination claim, a different sort of claim altogether, triggers coverage. It is at best uncertain whether the Illinois Supreme Court would conclude that a Fifth Amendment self-incrimination claim should be treated like a malicious prosecution claim, in the sense that it should trigger coverage only in the early stages of a criminal case.[4] Judge Darrah's ruling that Rivera's Fifth Amendment self-incrimination claim against Waukegan potentially triggers coverage and gives rise to a duty to defend was not manifest error.

Westport also argues that the underlying complaint does not trigger Westport's duty to defend based on any claim of wrongdoing in the 1998 retrial because the complaint does not even mention the 1998 retrial. Again, however, this Court agrees with Judge Darrah, who reasoned as follows in the December 11, 2014 trigger ruling:

> "[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy." *Am. Econ. Ins. Co. v. Holabird & Root*, 886 N.E.2d 1166, 1171 (2008). Courts are "charged with comparing the underlying complaint, inferences, and *other known facts* to the insurance policy." *Northfield Ins. Co.*, 701 F.3d at 1130. While Rivera does not specifically allege that his claims are applicable to the 1998 trial and conviction, several of his claims potentially apply to that trial. *See id.* at 1129 ("Because we can imagine an IIED claim *potentially* falling within the policy terms, we will

---

[4] The present motion for reconsideration does not require this Court to make a prediction, but the Illinois Supreme Court could conceivably conclude, for example, that each courtroom use of a self-incriminating statement in a criminal case is a separate triggering occurrence or offense, or, alternatively, that repeated use of a self-incriminating statement in a criminal case is a continuing occurrence or offense that triggers coverage in each policy period in which the statement is used in a courtroom proceeding. *See generally Roman Catholic Diocese of Joliet, Inc. v. Interstate Fire Ins. Co*., 685 N.E.2d 932, 938-39 (Ill. App. Ct. 1997) (discussing issue of trigger of coverage for claim of negligent supervision of a priest who committed acts of abuse over a period of years).

assume that Starks fully intends to submit such a claim.")  Any claims regarding an injury that occurred during the 1998 trial and conviction would potentially fall within the policy coverage.

(ECF No. 84 at 8-9.)  Rivera clearly alleged that the use of his coerced confession against him violated his self-incrimination rights; he merely omitted the date of the trial at which his coerced confession was used against him, which nothing required him to include.  There is no requirement that the underlying plaintiff plead the date of his injury in order for a complaint to trigger insurance coverage.  *See, e.g., Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 567 (7th Cir. 1998).

Nor is it true that Rivera's claim of constitutional injury based on the use of his coerced confession against him at the 1998 retrial was a merely "hypothetical" claim that was not actually pled in Rivera's complaint.  The Court agrees with Westport that "it is the actual complaint, not some hypothetical version, that must be considered," *Connecticut Indem. Co. v. DER Travel Serv., Inc.*, 328 F. 3d 347, 350-51 (7th Cir. 2003), but Rivera did claim in his actual complaint that his self-incrimination rights were violated.  It is of no consequence that he left out the date on which that violation occurred; federal pleading standards did not require him to plead the claim with such specificity in order to give Waukegan notice of his claim.  It is clear from Rivera's complaint that he intended to assert claims arising out of his prosecution for the Holly Staker rape and murder; there was no question as to what case was the subject of the underlying complaint.

Westport's motion for reconsideration of Judge Darrah's trigger ruling is denied.

## III.  WAUKEGAN'S MOTION TO DISMISS COUNT II OF WESTPORT'S COMPLAINT

Waukegan moves to dismiss Count II of Westport's complaint, in which Westport alleges that Waukegan is collaterally estopped from asserting that Westport owes coverage for the

Rivera lawsuit because it already unsuccessfully litigated the same issue of trigger of coverage in

*American Safety Casualty Insurance Co. v. City of Waukegan*, 678 F.3d 475 (7th Cir. 2012), and

*Northfield Insurance Co. v. City of Waukegan*, 701 F. 3d 1124 (7th Cir. 2012).

Collateral estoppel applies if the following four elements are met: "1) the issue sought to

be precluded must be the same as that involved in the prior action, 2) the issue must have been

actually litigated, 3) the determination of the issue must have been essential to the final

judgment, and 4) the party against whom estoppel is invoked must be fully represented in the

prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir.

1990). Waukegan contends that Count II should be dismissed because it did not litigate the

same trigger issue that this case presents in either the *Northfield* case or the *American Safety*

case.

The trigger issues Waukegan litigated in *Northfield* and *American Safety* may have been

similar to the extent they arose in wrongful conviction cases like this one, but they were not

identical. *Northfield* and *American Safety* concerned coverage for other underlying lawsuits

brought by other claimants, and neither decision addressed trigger of coverage for a Fifth

Amendment self-incrimination claim. Westport contends that the issues need not be totally

identical in all particulars for collateral estoppel to apply, citing *H-D Michigan, Inc. v. Top*

*Quality Service, Inc.*, 496 F.3d 755, 760-61 (7th Cir. 2007) and *Meyer v. Rigdon*, 36 F.3d 1375,

1378-79 (7th Cir. 1994), but neither case supports that proposition; indeed, as Waukegan points

out, *H-D Michigan* rather undermines it.[5]

---

[5] In *H-D Michigan*, the Seventh Circuit concluded that an earlier decision holding that the word "hog" was generic as applied to large motorcycles had no preclusive effect in a case involving whether "hog" was generic as applied to a motorcycle club. *H-D Michigan*, 496 F.3d at 760-61. Thus, the case tends to support Waukegan's position that there is no collateral estoppel if there are even slight differences in the issues.

Because and to the extent that Count II seeks a declaration that Waukegan is collaterally estopped from arguing that the Westport policies are triggered by certain of Rivera's claims based on cases that did not concern the Rivera matter at all, Westport fails to state a claim on which relief can be granted, and Waukegan's motion to dismiss Count II is granted.[6]

## IV. WAUKEGAN'S MOTION FOR A RULE TO SHOW CAUSE

Waukegan moves for a rule to show cause why Westport should not be held in contempt for failing to pay defense costs after Judge Darrah issued his December 11, 2014 trigger ruling.

Waukegan misunderstands the nature of Judge Darrah's ruling. Judge Darrah did not issue an injunction or other order that compelled or commanded Westport to do anything. After the parties filed motions for judgment on the pleadings in this declaratory judgment action, Judge Darrah simply declared that Westport had a duty to defend. There was no deadline for compliance or any other indication of an injunctive component to the ruling. The cases Waukegan cites in its briefs are inapposite, as they concern either court orders that by their very nature command a party to do something, such as an injunction or subpoena duces tecum, or contumacious conduct in violation of a court's explicit directions. There was no unambiguous or unequivocal command in Judge Darrah's order, and therefore Westport is not in contempt that order. Waukegan's motion for rule to show cause is denied.

---

[6] The Court's ruling is limited to the issue of whether Waukegan is barred by collateral estoppel, based on its positions in *American Safety* and *Northfield*, from taking the position that certain of Rivera's claims trigger coverage under the Westport policies; it does not extend to other positions Waukegan may take or other preclusion doctrines.

## CONCLUSION

For the reasons set forth above, the Court denies Westport's motion [105] for reconsideration of Judge Darrah's December 11, 2014 trigger ruling, grants Waukegan's motion [103] to dismiss Count II of Westport's complaint, and denies Waukegan's motion [104] for a rule to show cause. A status hearing is set for January 27, 2016 at 9:30 a.m.

**SO ORDERED.**

**ENTERED: January 15, 2016**

**HON. JORGE ALONSO**
**United States District Judge**